## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

RAYMOND DELGADO,

      Petitioner,

v.

                                                Case No. 3:18-cv-823-TJC-JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## ORDER

## I.   Status

        Petitioner, Raymond Delgado, an inmate of the Florida penal system, initiated this action, with help from counsel, by filing a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. Doc. 1. He is proceeding on an Amended Petition.[1] Doc. 4. Petitioner challenges a state court (St. Johns County, Florida) judgment of conviction for sexual battery by a person in familial or custodial authority (count two) and lewd or lascivious molestation (count nine). Petitioner is serving a twenty-five-year term of incarceration as to count two and a consecutive fifteen-year term of sex offender

_____

[1] Counsel, on behalf of Petitioner, filed the Amended Petition to include Petitioner's signature.

probation as to count nine.[2] Respondents filed a Response, <u>see</u> Doc. 7 (Resp.), and at the Court's direction, a Supplemental Response, <u>see</u> Doc. 15 (Supp. Resp.).[3] Petitioner filed a Reply, <u>see</u> Doc. 10, and a Supplemental Reply,[4] <u>see</u> Doc. 17. This case is ripe for review.

## II.    <u>Governing Legal Principles</u>

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v.</u> <u>Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert.</u> <u>denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u>

---

[2] In exchange for Petitioner's negotiated plea of no contest to counts two and nine, the state agreed to nol pros counts one, three, four, five, six, seven, eight, and ten.

[3] Attached to the Response and Supplemental Response are several exhibits. <u>See</u> Doc. 7-1 ("Resp. Ex.") and Doc. 15-1 ("Supp. Resp. Ex.").

[4] In their initial Response, Respondents requested that the Court dismiss this case as untimely filed. <u>See</u> Doc. 7. The Court denied that request and directed Respondents to file a supplemental response. <u>See</u> Doc. 13.

<u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

<u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." <u>Id.</u> § 2254(e)(1).

AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on

4

direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>see also</u> <u>Pope v. Rich</u>, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that <u>Boerckel</u> applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas

5

review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[5] supra, at 747–748, 111 S. Ct. 2546; Sykes,[6] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Even though a claim has been procedurally defaulted, a federal court may still consider the claim if a state

---

[5] Coleman v. Thompson, 501 U.S. 722 (1991).

[6] Wainwright v. Sykes, 433 U.S. 72 (1977).

habeas petitioner can show either (1) cause for and actual prejudice from the

default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d

1144, 1157 (11th Cir. 2010). For a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[7] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

Without a showing of cause and prejudice, a petitioner may receive

consideration on the merits of a procedurally defaulted claim if the petitioner

can establish that a fundamental miscarriage of justice, the continued

incarceration of one who is actually innocent, otherwise would result. The

Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires

---

[7] Murray v. Carrier, 477 U.S. 478 (1986).

7

proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

### C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the

8

outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

The two-part Strickland test applies to challenges to the validity of guilty pleas based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 58 (1985). The petitioner must still demonstrate that counsel's performance was deficient. See id. at 56-59; Lynch v. Sec'y Fla. Dept. of Corr., 776 F.3d 1209, 1218 (11th Cir. 2015). To establish prejudice, however, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59 (footnote omitted); Lynch, 776 F.3d at 1218.

There is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

Further, "[t]he question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether

that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

III.   **Analysis**

   **A. Ground One and Ground Two**

   Petitioner relies on the same underlying facts to support Grounds One and Two, thus the Court addresses these claims together. See Doc. 4 at 15. In Ground One, Petitioner asserts that his trial counsel was ineffective for advising him to enter a plea of guilty to count two – sexual battery by a person

in familial or custodial authority – because Petitioner was never in a position of familial or custodial authority over the victim while in Florida. Id. at 13-15. According to Petitioner, if trial counsel had advised him that there was no factual basis for count two and that the charge was subject to dismissal, Petitioner would not have pled guilty to the offense and would have insisted on going to trial. Id. In Ground Two, Petitioner argues that because he is factually and legally innocent of count two, his conviction and sentence for that offense violates his rights under the Due Process Clause. Id.

Petitioner, with help from postconviction counsel, raised these claims in ground one and ground two of his Florida Rule of Criminal Procedure 3.850 motion for postconviction relief. Resp. Ex. K at 5-7. The trial court conducted an evidentiary hearing on the Rule 3.850 motion, during which it heard testimony from Petitioner's trial attorneys, Terry Shoemaker, Clyde Taylor, Jr., and Clyde Taylor, III; and Petitioner. See generally Resp. Ex. M. The trial court later denied these claims. Resp. Ex. N. As to the allegations in ground one, the trial court found the following:

> In ground one, Defendant asserts that counsel was ineffective for advising Defendant to plead guilty to Count II of the information and alleges Count II was subject to dismissal because Defendant contends he was not in a position of familial or custodial authority over the victim at any time in the state of Florida. Defendant's testimony established that Defendant met and became friends with the [victim] and her parents on a cruise, and it was later decided that the victim

would spend a summer working for Defendant in his chiropractic office in South Carolina. During that time, the victim lived with Defendant and his fiancée and Defendant was responsible for her care. Defendant testified that he exercised custodial authority over the victim when she lived with him and his fiancée in South Carolina. Defendant testified that the victim lived with them for about 2 months, then returned to her parents' home in St. Johns County. Thereafter, Defendant confirmed that he visited St. Johns County for a few days at a time when he stayed with the victim and her parent[s] in Florida. Defendant testified that between 2007 and 2010 he visited Florida for the weekend on five occasions. Defendant testified that he was friends with the victim's father and would play golf and spend time with him during those visits. Defendant confirmed that it was alleged that he had sex with the victim in her parents' home, but stated her parents were always present in the home and that he and the victim were never alone in the home. Regarding any money or gifts he gave the victim, Defendant testified that he contacted the victim's family and asked for permission to open an account for her because he wanted to deposit her work check into that account. Defendant stated he also made a $25 deposit into the account as a birthday gift. Defendant testified that the victim's parents never expressly transferred familial custody or authority to him while in St. Johns County. Defendant stated he conveyed to defense counsel that he was never in familial or custodial authority over the victim in Florida. Defendant asserted it was "clear" that the charge did not apply and that he informed Attorney Shoemaker of this belief. Defendant testified that Attorney Shoemaker said he would look into the issue, but that he did not follow up with Defendant. Defendant stated if there was a valid basis for a motion challenging the charge he would have insisted on filing it and would have gone to trial to preserve that challenge. At the time, Defendant stated he thought the worst case scenario was a 25 year sentence and thought anywhere between time-served and 25 years would be

negotiated. Defendant testified that he believed the charges would have been dismissed if he had been successful on a motion to dismiss the familial/custodial charges.

Attorney Shoemaker testified that he met with Defendant over one-dozen times and they went over all of the evidence together. Attorney Shoemaker stated that Defendant was very in-tune with what was going on in the case and that they communicated well – the options were simply not good. Attorney Shoemaker testified that he spoke with Defendant and researched the familial/custodial authority issue. Attorney Shoemaker recalled informing Assistant State Attorney Warren that he did not believe the State could prove a familial or custodial relationship in Florida. However, Attorney Shoemaker testified that Attorney Warren provided him with additional evidence including copies of checks and birthday gifts that he thought constituted a familial or custodial relationship under the case law. Attorney Shoemaker believed that by continuing to send items and money, Defendant continued to exercise authority over the victim and stated his reading of the case law supported that conclusion. Attorney Shoemaker testified that the State Attorney's office had a policy that they would not continue to negotiate if defendant[] continued filing motions. Attorney Shoemaker testified that he did not think seeking dismissal of the familial/custodial authority charge was worth cutting off channels of communications with the State Attorney's Office because he believed that challenge would have been unsuccessful. Attorney Shoemaker also testified that Defendant told him that he did not want to put the victim through a trial because of his relationship with her. Attorney Shoemaker testified that the defense and State ultimately agreed to a cap of 25 years in hopes that Judge Berger would sentence him to substantially less.

During cross-examination, Attorney Shoemaker explained that it was his understanding that the custodial authority started in South Carolina, then Defendant travelled to Florida where he gave the victim money and took her shopping. Attorney Shoemaker acknowledged that Defendant visited Florida as a guest and stayed with the victim and her parents. Attorney Shoemaker stated while Defendant was visiting Florida, he was able to exert authority over the victim as a way to keep her close. Attorney Shoemaker testified that he and Defendant spoke at length about the issue. Attorney Shoemaker originally thought it was a good argument, but the more research he did, he thought the case law established that familial or custodial authority could be established under the facts at hand. Attorney Shoemaker reasoned that Defendant used his ability to buy the victim gifts to become in [sic] a position of custodial authority and recalled that his research and the State's research supported that conclusion. Attorney Shoemaker recalled that Defendant gave the victim a check for $250 and set up an account for the victim that he would put money in regularly. Attorney Shoemaker asserted that a defendant does not have to actually live in the victim's home to be considered in a position of familial custody or control. Attorney Shoemaker recalled that incidents also occurred in a vehicle while no parent was present. Attorney Shoemaker testified there were times Defendant and victim were left alone together. Attorney Shoemaker agreed that Defendant visited Florida on multiple occasions, and the State could have proceeded with multiple counts. Attorney Shoemaker stated he discussed the motion with Defendant and they made the decision not to file the motion.

The State then called Clyde Taylor, III, Esq. Attorney Taylor testified that as a team, they took "no more than 10" depositions. Attorney Taylor stated he went back and looked through his notes and saw that he had written a basic memo and had researched the familial/custodial authority issue, which led him to

conclude that he discussed it with Defendant; but that he does not recall a specific conversation. Attorney Taylor testified that he would not have suggested to Defendant that if they prevailed on motion to dismiss on the familial/custodial authority count that the whole case would be dismissed.

Next, the State called Clyde Taylor, Jr., Esq. Attorney Taylor remembered the incident that occurred in Florida occurred because the father "had gone off and left the victim with Defendant." Attorney Taylor recalled having a conversation with Defendant in November of 2011 regarding potential issues that could come up at trial that they would have to explain to a jury. Attorney Taylor did not remember Defendant ever mentioning that he thought the case would be over if the familial/custodial authority count was dismissed, and stated that he certainly never advised Defendant in such a manner.

Defendant acknowledged in his motion and testimony that he exercised custodial authority over the victim when she lived with him and his fiancée in South Carolina. Defendant testified that she lived with them for about 2 months, then returned to her parents' home in St. Johns County, where Defendant testified he visited about five times over various weekends. Defendant testified that he was never left alone with the victim during these visits. [H]owever both Attorneys Shoemaker and Taylor, Jr. testified that the Defendant <u>was</u> left alone with the victim during his visits to Florida.

"Custody" connotes a duty or obligation to care for the other. <u>Hallberg v. State</u>, 649 So. 2d 1355, 1357 (Fla. 1994). Concerning a child, it usually implies that the person has some responsibility <u>in loco parentis</u>. <u>Id</u>. It is clear that the victim's parents placed Defendant in custodial control and authority over the victim when they allowed her to live with Defendant in South Carolina. The Court also finds that counsel was not

deficient in concluding that the case law supported the charge based on these facts. For example, in <u>Oliver v. State</u>, the Fifth District Court of Appeal found similar facts sufficient for a jury to conclude the defendant was in a position of familial or custodial authority. 977 So. 2d 673. 676 (Fla. 5th DCA 2008). The Court also notes that the facts of this case are distinguishable from those in <u>Johnston v. State</u>, because here, it was established that Defendant had been responsible for the victim's care in the past. 682 So. 2d 215. 217 (Fla. 5th DCA 1996) (Defendant not in position of familial or custodial authority over victim for multiple reasons, one of which being that the victim testified Defendant had never been responsible for her care); <u>Stricklen v. State</u>, 504 So. 2d 1248, 1250 (Fla. 1st DCA 1986) (Fact that Defendant did not reside in victim's home not dispositive of whether Defendant was in position of familial or custodial authority over victim).

Further, it is evident to the Court that defense counsels' decision not to challenge the familial/custodial authority charge was sound trial strategy. Considering the fact that Defendant does not contest the charges insofar as they allege he had sexual relations with the victim, and only questions the familial/custodial authority allegation, the Court finds that focusing on plea negotiations was reasonable trial strategy. Defense counsel negotiated a deal in which Defendant pled no contest to one count of Lewd or Lascivious Molestation and one count of Sexual Battery By Person in Familial or Custodial Authority and the State agreed to a cap of 25 years and to stand silent as to the number of years within that cap. Had Defendant succeeded in dismissal of the familial/custodial authority charge, the State could have charged Defendant with additional Lewd or Lascivious Molestation counts, since the amended information alleged separate time-frames for each count. Therefore, Defendant could have received consecutive 15 year sentences for each count. <u>See generally Graham v. State</u>, 207 So. 3d 135 (Fla. 2016); <u>Sanders v. State</u>, 101

So. 3d 373 (Fla. 1st DCA 2012). Prior to the plea agreement, Defendant was charged with 7 counts of Sexual Battery by Person in Familial or Custodial Authority and 3 counts of Lewd or Lascivious Molestation. Assuming <u>arguendo</u> that Defendant was successful in procuring the dismissal of the Sexual Battery by Person in Familial or Custodial Authority charges, and assuming the State did not file any additional charges, that would have left Defendant with the 3 counts of Lewd or Lascivious Molestation and a possible exposure of 45 years incarceration. Defendant does not allege that he had any defense to the Lewd or Lascivious Molestation charges and Attorney Shoemaker testified that Defendant admitted his guilt to the accusations. Further, Defendant's belief that the entire case would have been dismissed had counsel successfully challenged the familial/custodial authority counts is clearly erroneous, and casts doubt on Defendant's insistence that he would have proceeded to trial but for counsels' decision not to challenge that particular charge. For the aforementioned reasons, the Court finds that counsel was not deficient in declining to seek dismissal of Count II or advising Defendant to plead guilty to Count II. Therefore, because Defendant has failed to establish deficient performance or prejudice, ground one will be denied.

Resp. Ex. N at 3-8. As to the allegations in ground two, the trial court stated as follows:

In ground two, Defendant asserts that he was denied due process of law as a result of being convicted and sentenced to twenty-five years imprisonment on Count II of the amended information when he was not in a position of familial or custodial authority over the victim at any time in Florida, and therefore the State could not prove this element of the offense and Defendant was factually and legally innocent. "A rule 3.850 motion is the proper vehicle to attack the factual

> basis underlying the sentence imposed as the result of a defendant's plea." <u>State v. Kogan</u>, 190 So. 3d 268, 269 (Fla. 5th DCA 2016). Here, pursuant to the prior analysis in ground one and after consideration of the testimony at the evidentiary hearing and reviewing the plea colloquy and record evidence, this Court finds that a factual basis existed for Count II. Accordingly, ground two will be denied.

Resp. Ex. N at 8-9 (record citations omitted). Petitioner, with help from postconviction counsel, appealed the trial court's denial of these two claims. Resp. Ex. P. The First District Court of Appeal per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. S.

The Court addresses these claims in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claims was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). Ground One and Ground Two are denied.

**B. Ground Three**

Petitioner asserts that his trial counsel was ineffective for failing to move to suppress Petitioner's confession made during his police interrogation with St. Johns County, Florida, Detective Russ Martin. Doc. 4 at 15. Petitioner contends that if counsel advised him that the statements he made during his police

interrogation could be suppressed, he would not have entered his plea and would have insisted on going to trial. Id.

Petitioner raised this claim as ground three of his Rule 3.850 motion. Resp. Ex. K at 8-10. Following an evidentiary hearing, the trial court denied the claim as follows:

> In ground three, Defendant asserts that counsel was ineffective for failing to file a motion to suppress Defendant's confession based on the St. Johns County Sheriff's officer's alleged violation of his Fifth and Sixth Amendment rights to counsel and to remain silent and Miranda v. Arizona. In his motion, Defendant alleges that Detective Martin violated his right to counsel and right to remain silent when Defendant asked Detective Martin if he needed an attorney and Detective Martin replied "Sir, that's your right and that's basically way [sic] I'm explaining to you." Defendant asserts that Detective Martin should have answered "yes" to Defendant's question. According to his motion, Defendant also informed the Detective that he did not have an attorney in Florida, which Defendant argues should have alerted the Detective to the fact that he had an out of state attorney.
>
> Attorney Shoemaker testified that he did not think a motion to suppress the St. Johns County encounter would have been a valid motion because the detective simply said he could not give Defendant legal advice when Defendant asked if he needed an attorney. Attorney Shoemaker stated they filed a motion to suppress statements regarding the South Carolina interview because the Defendant had made it clear to the South Carolina officers that he was represented by counsel. However, regarding the St. Johns County questioning, Attorney Shoemaker stated he reviewed the interview with Defendant and that Defendant had signed a valid waiver. Attorney Shoemaker testified

19

that Defendant agreed to talk to the officer. Attorney Shoemaker stated that he told Defendant he was not going to file a motion to suppress and that Defendant understood. Attorney Shoemaker asserted that it was all four attorneys' opinion that the motion would not be successful. Regarding preserving error for appeal, Attorney Shoemaker reiterated it would not have been a valid motion and he was not going to file an invalid motion just to have a record for appeal. On cross, Attorney Shoemaker agreed that they filed motions that they worked out with the State, such as a motion to suppress the testimony from the South Carolina detective and a motion in limine on the DNA evidence.

Defendant testified that he recalled speaking with Detective Martin at the St. Johns County Sheriff's Office concerning this case. Defendant testified he had not heard the recording of the interview, but believed he read the transcript, but is not sure. Defendant recalled speaking with Attorney Shoemaker concerning the interview, but stated that Attorney Shoemaker told him the issue was moot. Defendant asserted that Attorney Taylor and Attorney Shoemaker said they had no defense. Defendant testified that Attorney Shoemaker never advised him that he should file a motion to suppress his statements to Detective Martin. Defendant testified that had counsel filed a motion to suppress, he would not have pled guilty and would have insisted on going to trial to preserve the challenge.

Attorney Clyde Taylor, III testified that, at the deposition of Detective Martin, he wanted to get some details as to how Defendant was approached. For example Attorney Taylor was looking into whether Defendant was pressured into making a statement. Attorney Taylor testified that once the video interrogation began, he focused on whether Defendant asserted his right to an attorney. Attorney Taylor testified that it was his opinion that Defendant did not make an unequivocal request for counsel.

Although Defendant's question as to whether he needed a lawyer was likely a prefatory statement under <u>Almeida v. State</u>, this Court finds that Detective Martin's reply of "Sir, that's your right and that's basically way [sic] I'm explaining to you" was a good faith attempt to provide a straightforward answer. 737 So. 2d 520; <u>State v. Glatzmayer</u>, 789 So. 2d 297, 305 (Fla. 2001) (Officer's response to Defendant's question of whether "they thought he should get a lawyer?" that it was his choice constituted a good-faith effort to give a simple and straightforward answer). Further, after the Defendant waived his <u>Miranda</u> rights, Detective Martin had no duty to clarify equivocal or ambiguous requests to terminate the interrogation. <u>Ferguson v. State</u>, 200 So. 3d 106, 108 (Fla. 5th DCA 2015), reh'g denied (Feb. 17, 2016), review denied, SC16-JR7, 2016 WL 4247583 (Fla. Aug. 11, 2016) (if a suspect makes an equivocal or ambiguous request for counsel, police officers are not required to stop the interrogation or ask clarifying questions); <u>Miles v. State</u>, 60 So. 3d 447 (Fla. 1st DCA 2011). The Court finds that Defendant's statement of "I don't have an attorney here . . . in Florida" was also not an unequivocal request for counsel nor should it have alerted Detective Martin to the fact that Defendant had an out of state attorney. <u>See generally</u> <u>Alvarez v. State</u>, 890 So. 2d 389, 391 (Fla. 1st DCA 2004) (Defendant's statement to police that a third party (who later turned out to be his attorney) instructed him not to talk was not an unequivocal, unambiguous invocation of his right to remain silent or his right to counsel). The Court also finds no indication that Defendant was "steamrolled" by Detective Martin. Accordingly, counsels' decision not to seek suppression of Defendant's statement to Detective Martin was not deficient. The fact that counsel filed a Motion to Suppress Defendant's Statements made to the South Carolina detective supports the finding that counsel would have filed a similar motion regarding the St. Johns County interview had there been a basis for doing so. The Court finds that counsels' testimony supports the finding that declining to file the motion

> was sound trial strategy. Additionally, Defendant has
> not established prejudice. Therefore, ground three will
> be denied.

Resp. Ex. N at 9-12. Petitioner appealed the trial court's denial, briefing this issue in his appellate brief. Resp. Ex. P. The First DCA per curiam affirmed the denial without a written opinion. Resp. Ex. S.

The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of Strickland, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. See 28 U.S.C. § 2254(d). Ground Three is denied.

## C. Grounds Four and Five

In Ground Four, Petitioner asserts that trial counsel was ineffective for failing to object to the state's "First Williams Rule Notice" because the alleged similar fact evidence – sexual relations with the victim that occurred in South Carolina – was not sufficiently similar to the charged offenses because the age of consent in South Carolina at the time of the alleged act was 14. Doc. 4 at 17-6. And in Ground Five, Petitioner contends that the cumulative effect of trial counsel's errors denied Petitioner his Sixth Amendment right to counsel and resulted in his involuntary plea. Id. at 14.

Petitioner raised these claims in grounds four and six of his Rule 3.850 motion, respectively. Resp. Ex. K at 11-12, 15. Following an evidentiary hearing on the Rule 3.850 motion, the trial court denied the claims on the merits. Resp. Ex. N at 12-15, 17. Petitioner appealed the trial court's order, but his brief filed on appeal contained no arguments regarding the trial court's denial of these two claims. Resp. Ex. P. As such, Respondents argue that Grounds Four and Five of the Amended Petition are unexhausted and procedurally defaulted. Supp. Resp. at 9-10.

Florida Rule of Appellate Procedure 9.141 requires a petitioner to file an appellate brief if he received an evidentiary hearing on one or more claims. Fla. R. App. P. 9.141(b)(3)(C) (requiring the filing of an initial brief after the grant or denial of a Rule 3.850 motion if an evidentiary hearing was held on one or more claims). If a specific issue is not included in the required appellate brief, that issue is considered abandoned on appeal. Atwater v. Crosby, 451 F.3d 799, 809-10 (11th Cir. 2006) ("Pursuant to state procedural rules, abandonment of an issue results from submission of a brief without argument thereon in an appeal of an order denying relief after an evidentiary hearing." (citing Shere v. State, 742 So. 2d 215, 217 n.6 (Fla. 1999)); see also Cortes v. Gladish, 216 F. App'x. 897, 899-900 (11th Cir. 2007) (recognizing that if the petitioner "received an evidentiary hearing, his failure to address issues in his appellate brief would constitute a waiver").

Here, Petitioner received an evidentiary hearing on his Rule 3.850 motion. Resp. Ex. M. As such, Petitioner needed to file an appellate brief addressing each claim he wanted the appellate court to review when appealing the trial court's order denying his Rule 3.850 motion. Although he filed a counseled appellate brief, he did not brief the claims raised at bar, electing to brief only the issues raised in Grounds One, Two, and Three above. Petitioner's failure to fully brief and argue points on appeal constituted a waiver of the allegations in Grounds Four and Five of the Amended Petition. Thus, they are not exhausted and are now procedurally defaulted.

In his Supplemental Reply, Petitioner does not address Respondents' exhaustion argument and simply declines to make any reference to his allegations in Grounds Four and Five. See generally Doc. 17. He does not argue cause for and prejudice from the procedural defaults, nor does he assert that a fundamental miscarriage of justice will result if these claims are not addressed on the merits.[8] Id. As such, because these claims are unexhausted, Ground Four and Ground Five are denied.

---

[8] In his Amended Petition, Petitioner cites Martinez, 566 U.S. at 1, when answering the form question, "If you did not exhaust your state remedies on Grounds One through Five explain why." Doc. 4 at 8. However, he does not provide argument or facts to support that lone cite, nor does he connect the cite to a specific claim for relief. Id. Thus, the Court declines to conduct a Martinez analysis here.

Accordingly, it is

**ORDERED AND ADJUDGED**:

1.     The Amended Petition (Doc. 4) is **DENIED** and this case is **DISMISSED with prejudice**.

2.     The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.     If Petitioner appeals this Order, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[9]

**DONE AND ORDERED** at Jacksonville, Florida, this 20th day of January, 2022.



TIMOTHY J. CORRIGAN
United States District Judge

---

[9] The Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

Jax-7

C:     Raymond Delgado, #V40250
       counsel of record